UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID BAHORSKI, and
CHRISTOPHER L. GARNER,

    Plaintiffs,                                    Case No. 16-cv-12305

    v.                                            District Judge Marianne O. Battani

CITY OF EASTPOINTE,                 Magistrate Judge Mona K. Majzoub
MARY VAN HAAREN,
JOHN DOE BUILDING OFFICIALS,
and JANE DOE BUILDING OFFICIALS,

    Defendants.
_____/

**OPINION AND ORDER REGARDING DEFENDANTS' MOTION TO COMPEL [26],
PLAINTIFFS' MOTION TO COMPEL [34], AND MOTIONS TO QUASH OF
GARNER PROPERTIES [15] AND SUMMIT CONSULTING [16]**

This matter comes before the Court on Defendants' Motion to Compel (docket no. 26) and Plaintiff's Motion to Compel (docket no. 34). The parties filed Joint Statements of Resolved and Unresolved Issues regarding both motions. (Docket nos. 39, 43.) In addition, non-parties Garner Properties & Management, LLC and Summit Consulting Services, LLC each filed a Motion to Quash a subpoena served on them by Defendants. (Docket nos. 15, 16.)

All four motions were referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A). (Docket nos. 18, 27, 35.) The Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).

I.     **BACKGROUND**

Plaintiffs David Bahorski and Christopher L. Garner provide services to owners of residential property located in the City of Eastpointe, Michigan. The Parties dispute the precise

nature of the services provided, as well as Plaintiffs' connections to intermediary entities Garner Properties & Management, LLC ("GPM") and Summit Consulting Services, LLC ("SCS"). Plaintiffs contend that Defendants wrongfully charged them with violations of Section 10-46 of the Eastpointe Code of Ordinances, which provides as follows.

> No person shall hereafter allow to be occupied, or rented or let to another person for occupancy, any dwelling unit, rooming unit, single-family dwelling, two-family dwelling, multifamily dwelling, boardinghouse, roominghouse, lodginghouse, tourist house or hotel, which premises are intended for occupancy as a residential rental property within the city, for which a registration statement has not been properly made and filed with the building department of the city and for which a license has not been issued by the building department of the city.

Plaintiffs allege that Defendants filed such charges in violation of the Fourteenth Amendment, Fourth Amendment, and First Amendment to the U.S. Constitution, and that such charges amount to malicious prosecution, abuse of process, unjust enrichment, and defamation under Michigan law. Plaintiffs seek injunctive relief and money damages. In addition, Plaintiffs purport to represent a class of similarly situated individuals who (1) "do not own real property in the City of Eastpointe who have been charged criminally instead of the owners of real property who have allegedly violated the City's codes and ordinances" and who (2) "do not own real property in the City of Eastpointe who suffered malicious prosecution or abuses of process at the hands of the City of Eastpointe whose criminal charges related to building code enforcement were dismissed by *nolle prosequi*."

Plaintiffs sought a preliminary injunction in order to preclude Defendants from issuing criminal violations to non-owners of rental properties. (Docket no. 11.) In support, Plaintiffs contended that they do not own or personally manage any properties subject to the rental-housing ordinances, and that "it is unconstitutional to attempt to hold an employee or agent responsible for the acts of a corporate entity." Plaintiffs accuse Defendants of implementing a policy of "vicarious criminal liability" by charging Plaintiffs in a personal capacity for violations by

2

owners and/or corporate property managers. In addition, Plaintiffs assert that, even assuming that the ordinances apply to them in an individual capacity, Defendants lacked probable cause to believe that Plaintiffs violated the ordinances.

Defendants opposed Plaintiffs' motion, and contended that Plaintiffs signed housing registration applications in an individual capacity and thereby agreed to be held liable for violations of the subject ordinances on behalf of the property owners. In addition, Defendants questioned whether GPM and SCS were legitimately independent from Plaintiffs.

On June 1, 2017, the Court held a hearing regarding Plaintiffs' motion, and preliminarily enjoined Defendants from prosecution of criminal charges under the City of Eastpointe's Residential Rental Housing Ordinance against Plaintiffs in their individual capacities for violations arising from properties for which Plaintiffs are not individually identified as "owner" and/or "agent." In so holding, the Court preliminarily held that if Plaintiffs were "mere employees or contractors of the corporate applicant[s], then they cannot be individually charged." (Docket 29, p. 42.)

On June 9, 2017, Defendants filed a motion to compel Plaintiffs to respond to Defendants' first interrogatories and document requests. (Docket no. 26.) On June 30, 2017 Plaintiffs filed a motion to compel Defendants to respond to Plaintiffs' initial requests. (Docket no. 34.) The Parties dispute the relevance and proportionality of each other's discovery requests. In addition, non-parties GPM and SCS filed motions to quash subpoenas served on them by Defendants. (Docket nos. 15, 16.)

## II. GOVERNING LAW

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998). Parties may obtain

3

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26. Information within this scope of discovery need not be admissible in evidence to be discoverable. *Id*. "Although a [party] should not be denied access to information necessary to establish her claim, neither may a [party] be permitted to 'go fishing,' and a trial court retains discretion to determine that a discovery request is too broad and oppressive." *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 320-21 (6th Cir. 2015) (citing *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).

Rules 33 and 34 allow a party to serve interrogatories and requests for production of documents on an opposing party. Fed. R. Civ. P. 33, 34. A party receiving these types of discovery requests has thirty days to respond with answers or objections. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A). Rule 30 allows a party to conduct a deposition of any person without leave of court, subject to certain exceptions. Fed. R. Civ. P. 30(a)(1). If the party receiving discovery requests under Rules 33 or 34 fails to respond properly, or if the person whose deposition is sought under Rule 30 fails to properly comply with the rule, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3). If a court grants a Rule 37 motion to compel, or if discovery is received after a Rule 37 motion is filed, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing party's

position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

Federal Rule of Civil Procedure 45 governs subpoenas and provides that the court must, upon motion, quash or modify a subpoena if the subpoena fails to allow a reasonable time to comply, requires a non-party to travel more than 100 miles, requires disclosure of privileged or protected materials, or subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). The court may quash or modify the subpoena if it requires the subpoenaed entity to disclose a trade secret or other confidential research, development, or commercial information. *Id*.

## III. ANALYSIS

This matter is before the Court on four discovery motions: Defendants' motion to compel (docket no. 26); Plaintiffs' motion to compel (docket no. 34); GPM's motion to quash (docket no. 15) and SCS's motion to quash (docket no. 16). The Court will address each motion in turn below.

### A. Defendants' Motion to Compel [26]

Defendants' motion to compel presents nine issues covering thirty four separate discovery requests. (Docket no. 39.) The Parties resolved one issue, with Plaintiffs stipulating that they do not allege lost wages or lost income damages, leading Defendants to withdraw their Request to Produce no. 11. The remaining issues will be addressed below.

*1. Plaintiffs' Social Security Numbers*
*(Interrogatory no. 1)*

Defendants seek to compel Plaintiffs to disclose their Social Security numbers. Plaintiffs provided the last four digits of their Social Security numbers and object to Defendants' request to compel the entire numbers. On review of the pleadings, Defendants fail to advance any explanation for the alleged relevance of Plaintiffs' Social Security numbers, instead simply

asserting that such information "falls within the scope of discovery." (Docket no. 26, p. 1.) Absent a more reasoned argument regarding the relevance of Plaintiffs' Social Security numbers, the Court has no basis to compel Plaintiffs to produce such information.

### 2. Information regarding SCS and GPM
### (Interrogatory no. 4, Requests to Produce nos. 3, 6, 7)

Defendants request various information regarding SCS and GPM. Plaintiffs object to producing such information, asserting that "the companies are not parties to this case and . . . Plaintiffs are parties only in their individual, and not their representative, capacities." (Docket no. 39, p. 2.) Defendants contend that information regarding SCS and GPM is relevant to (1) "the asserted separation between" Plaintiffs and the LLCs associated with them and to (2) the LLCs' compliance or noncompliance with Eastpointe ordinances.

Under the circumstances of this case, Plaintiffs' basis for opposing Defendants' requests regarding GPM and SCS—that those companies are separate and independent corporate entities—does not withstand scrutiny. Information regarding those companies is relevant precisely because Plaintiffs claim that they are separate entities.

In their complaint, Plaintiffs allege that Defendants unlawfully charged Bahorski and Garner in their individual capacities because the person "that actually violates their code . . . is typically a corporate entity." (Docket no. 1, ¶ 35.) In their motion for preliminary injunction, Plaintiffs further contend that "it is unconstitutional to attempt to hold an employee or agent responsible for the acts of a corporate entity." (Docket no. 11, p. 13.) During the hearing on Plaintiffs' motion, the Parties raised the issue of whether GPM and SCS were separate corporate entities, with Counsel for Plaintiffs asserting that "David Bahorski individually and Christopher Garner individually have no contractual or legal obligation to these properties whatsoever" and that Plaintiffs "don't manage the properties." (Docket no. 29, p. 9.) The Court ultimately

granted Plaintiffs' motion for preliminary injunction, reasoning that Plaintiffs had a likelihood of success on the merits because "if, in fact, as plaintiff[s] argue[] they are mere employees or contractors of the corporate applicant then they cannot be individually charged." (*Id.* at 42.) In so holding, the Court plainly anticipated Defendants' challenge to the corporate identities of GPM and SCS.

Defendants' seek information regarding the ownership, operating agreements, and management contracts of SCS and GPM. In light of the issues addressed above, such discovery is relevant and proportional to the needs of the case. To the extent that Plaintiffs clearly attest that they have produced all responsive material in their possession and control, the Court will not compel any additional production.

### 3. Employment Records and Income Tax Records
### (Requests to Produce nos. 4, 12, 13, 14)

Defendants request Plaintiffs' previous employment records, employment agreements, wage records, pay stubs, 1099s and W-2s, as well as authorizations for the release of such records from Plaintiffs' employers. Plaintiffs contend that such information lacks relevance because they do not claim lost wages or lost income.

Because Plaintiffs have stipulated that they do not seek lost wages or lost income, much of the material requested by Defendants is rendered irrelevant. The Court will not compel Plaintiffs to produce previous employment records, previous employment agreements, or wage records and pay stubs from previous employers. However, records regarding Plaintiffs' work for GPM and SCS are relevant to the issue of whether GPM and SCS are separate and independent corporate entities. Accordingly, the Court will order Plaintiffs to produce wage records, pay stubs, 1099s and/or W-2s associated with their work for GPM and SCS.

### 4. Residential Rental Property Registration Applications
#### (Requests to Produce nos. 8, 9)

Defendants seek rental property registration applications prepared by Plaintiffs. Plaintiffs object to this request, contending that Plaintiffs in their individual capacities did not prepare any such applications. Plaintiffs further assert that Defendants should be in possession of any applications filed with the City of Eastpointe, rendering the requests duplicative and unduly burdensome in violation of Fed. R. Civ. P. 26(b)(2)(C)(i).

Because Defendants fail to explain why they are not already in possession of materials filed with the City of Eastpointe or to describe any additional relevance attributable to the fact of Plaintiffs' possession of such material, Defendants' requests for the registration applications are unreasonably cumulative and unduly burdensome. Accordingly, the Court will not compel Plaintiffs to produce the requested applications.

### 5. Itemization of Damages
#### (Interrogatory no. 8, Requests to Produce nos. 10, 15)

Defendants seek information and records regarding Plaintiffs' damages, including records of fines and fees paid to Defendants. Plaintiffs assert that they are not in possession of such material, and are seeking records from the 38th District Court. Plaintiffs further submit that Mr. Garner has provided all responsive records in his possession.

Because Plaintiffs attest that they do not possess the information sought by Defendants, the Court must deny Defendants' requests. Although Defendants reasonably contend that "[i]t is the Plaintiffs' duty and burden to identify and come forward with evidence of any damages they claim," any failure by Plaintiffs to prove their damages can be addressed at the dispositive motion stage of this case.

>    6.  *Prior Litigation Records*
>        *(Request to Produce no. 20)*

Defendants seek records regarding Plaintiffs' involvement in "any other litigation than the present matter." Plaintiffs contend that this request is overly broad and unduly burdensome, and that the records Defendants seek are publicly available.

In Interrogatory no. 12, Defendants requested that Plaintiffs provide information regarding any claims made or lawsuits filed by Plaintiffs, including:

> the names of the parties involved, the dates upon which the claim or Complaint was filed, the Court in which each action was prepared, the case number and caption of the litigation, and the status and/or result of that claim or lawsuit, including any disposition, judgment, settlement or reward and the nature of every injury and damage you sustained.

(Docket no. 26-2, p. 17; docket no. 26-3, p. 16.) Plaintiff Bahorski responded that he was "not aware of any such claims." (Docket no. 26-2, p. 17.) Plaintiff Garner disclosed the existence of one prior lawsuit—Lawrence M. Garner et al. vs. City of Roseville et al.—and provided the case number, filing date, venue, and a summary of its resolution. (Docket no. 26-3, p. 16.) Defendants do not seek to compel any additional response to Interrogatory no. 12. (*See* Docket no. 39, Joint Statement of Resolved and Unresolved Issues Regarding Defendants' Motion to Compel.)

Defendants' Request to Produce no. 20 seeks production of "copies of any and all records, documents, pleadings, writings, recordings, or correspondence of any kind identifying [Plaintiffs'] involvement in any other litigation than the present matter." (Docket no. 26, p. 9.) Plaintiff Bahorski states that he "is not in possession of any documents relative to this request." (Docket no. 26-2, p. 26.) Plaintiff Garner objects to the request as "overly broad and unduly burdensome," asserts that the request "seeks confidential attorney-client information and

attorney work product," and contends that "Defendant can access all public files through the PACER system." (Docket no. 26-3, p. 24.)

Defendants contend that the records requested "are relevant and subject to discovery," that "Plaintiffs have personal knowledge of their own prior litigation and are in the best position to identify and produce the requested documents," and that "PACER covers only the federal courts and does not include state courts, many of which have not adopted electronic filing." (Docket no. 39, p. 6.)

As set forth above, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26. Because Plaintiff Garner's prior action against the City of Roseville involved claims similar to those asserted by Plaintiffs in the present matter, documents from the Roseville action are relevant to this case.

With regard to Plaintiffs' contention that the request is unduly burdensome, Rule 26 provides that the court must limit the extent of discovery if it determines that the material sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* Plaintiffs assert that material regarding the Roseville case is publicly available through PACER. Because Defendants are able to use PACER to obtain the particular documents sought, the requested material can be obtained from a source that is less burdensome than production by Plaintiffs. However, Plaintiffs should produce any material regarding the Roseville case that was not filed on PACER, subject to assertion of applicable privileges via privilege log.

Finally, to the extent that the scope of Request to Produce no. 20 exceeds the scope of Interrogatory no. 12 by virtue of the fact that the latter is limited to cases initiated by Plaintiffs,

Plaintiffs are ordered to identify any legal proceedings in which they have been involved, including the filing date, case number, and venue, and to produce any related documents that are not publicly available, subject to assertion of applicable privileges via privilege log.

> 7. *Particularized Allegations*
> *(Interrogatories nos. 13-19, Requests to Produce nos. 22-26, 29-31)*

Defendants request the Court to compel Plaintiffs to provide additional information regarding the allegations in their complaint, including that Defendants violated Plaintiffs' rights under the U.S. Constitution. Plaintiffs contend that they have fully responded to these requests, and object to the requests to the extent that Defendants seek legal analysis from lay witnesses.

The Court observes that Plaintiffs have made a good faith effort to respond to Defendants' requests. For example, Interrogatory no. 13 requests Plaintiffs to provide the following information:

> (a) Identify each due process right which you claim was violated by the Residential Housing Ordinance.
>
> (b) Identify by name, address and telephone number each person who you claim violated your Fourteenth Amendment due process rights.
>
> (c) Identify with specificity each act, action and occurrence attributable to each individual which you claim violates your Fourteenth Amendment due process rights.
>
> (d) Identify with specificity each paragraph, element and/or application of the Residential Housing Ordinance which you claim violates the due process provisions of the Fourteenth Amendment.

(Docket no. 26-3, p. 17.) Plaintiffs objected to the request to the extent that it "seeks a legal opinion from a layperson" and added that "discovery is ongoing in this case which may result in additional information relative to these responses." (*Id*. at 18.) Subject to these objections, Plaintiffs stated that "the City unconstitutionally charges [Plaintiffs] with charges related to criminal conduct of owners/operators of investment real estate in the City of Eastpointe without proper notice, in violation of their own ordinances, and without probable cause." (*Id.*) Plaintiffs

asserted that "The City of Eastpointe; Mary Van Haaren; Debra Shultz, and potentially other unknown actors on behalf of the City of Eastpointe" violated their Fourteenth Amendment rights by "charging [Plaintiffs] with criminal activity without notice, without probable cause, and in violation of their own ordinances for the sole purpose of trying to extract fines and fees from [Plaintiffs] to do so." (*Id.*) Plaintiffs responded similarly to Defendants' Interrogatories regarding alleged violations of the Fourth Amendment (Interrogatory no. 14) and First Amendment (Interrogatory no. 15), and stated particularized allegations with respect to their claims of municipal liability (Interrogatory no. 16), abuse of process (Interrogatory no. 17), unjust enrichment (Interrogatory no. 18), and defamation (Interrogatory no. 19). In addition, Plaintiffs attested that "[t]he specificity sought by Defendant[s] cannot be provided at this time as the documents that support this response are in the exclusive possession of the Plaintiff [*sic*, Defendants] at this time." (Docket no. 26-2, p. 20.)

With respect to the requests for production, Defendants seek "copies of all documents, records and materials, audio, video, photographs, drawings, recordings and depictions of every kind and nature which evidence your claims that the Residential Housing Ordinance violates your due process rights" and/or "that any individual employed by the City of Eastpointe violated your due process rights." (Docket no. 26-3, pp. 19, 20.) Defendants make similar requests for production regarding the other counts of Plaintiffs' complaint. (*Id.* at 22-31.)

Plaintiffs objected to these requests as overly broad and unduly burdensome, and asserted that "the requested documents are likely in the possession of the 38th District Court" and/or "in the exclusive possession of the Defendant." (*Id.* at 19, 20, 22; docket no. 26-2, pp. 21, 22.) In addition, Plaintiff Garner "attached what documents are currently in his possession" and/or attested that he "has no such documents." (Docket no. 26-3, pp. 22-31.)

As addressed above, these requests seek to compel Plaintiffs to produce information that they claim not to possess or claim to have already produced. The Court cannot reasonably compel Plaintiffs to produce information they claim not to possess, or compel Plaintiffs, who are lay persons, to respond with legal conclusions. However, similar to Plaintiff Garner, Plaintiff Bahorski is ordered produce all responsive materials in his possession or control, or attest that he is not in possession or control of responsive documents.

### 8. Discovery Concerning Class Certification
### (Interrogatory no. 20, Requests to Produce nos. 33, 34)

Defendant moved to compel Plaintiffs to produce additional information regarding their attempt to certify a class of similarly situated individuals. However, Defendant now asserts that "at the hearing on Plaintiffs' Motion for Preliminary Injunction, the Court indicated that litigation of class certification issues would be deferred until resolution of the merits of Plaintiffs' claims." (Docket no. 39, p. 10.)

When Plaintiffs raised the prospect of filing a motion for class certification, the Court responded as follows:

> You know, you could file a motion for class cert[ification] but my inclination right now is that we need to find out what the answer is here on these two because it is going to apply to everybody else, so I'm not barring you from doing that but I don't know that I'm going to entertain this until this case is—until the motions are heard, the dispositive motion.

(Docket no. 29, p. 45.) In addition, the Court expressed a desire to "get to the merits of the case." (*Id.*) Ultimately, the Court opened discovery until November 30, 2017 and imposed a dispositive motion filing deadline of January 10, 2018. (*Id.*)

Although the Court did not expressly postpone discovery regarding class certification, the desire to address dispositive motions prior to class certification strongly suggests that judicial economy favors such a limitation on the scope of discovery. The Court must determine whether

13

discovery is "proportional to the needs of the case" considering factors such as "the importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Discovery concerning class certification will impose a substantial burden on the parties. And because information regarding the putative class is not relevant unless Plaintiffs themselves possess viable claims, the burden of such discovery at this stage of the case outweighs its benefit.

Accordingly, the Court will postpone discovery regarding class certification until after resolution of dispositive motions.

### B.     Plaintiffs' Motion to Compel [34]

Plaintiffs request the Court to compel Defendants to respond to six requests for production. (Docket no. 43.) The first five requests concern Plaintiffs' efforts to certify a class of similarly situated individuals. Defendants object to each request on the same basis—that discovery regarding class certification should be postponed until after resolution of dispositive motions. Accordingly, these five requests will be discussed together below.

#### *1.     Discovery Concerning Class Certification*
#### *(Requests to Produce nos. 1-5)*

Plaintiffs request the Court to compel Defendants to produce material regarding potential members of a class of similarly situated individuals, including, for example, a list of rental properties in Eastpointe and a list of fines assessed against those properties. For the reasons set forth above, the burden of such discovery, at the present stage of the case, outweighs its benefit. Discovery regarding the putative class of similarly situated individuals is postponed until after resolution of dispositive motions.

## 2. All Other Documents and Things
### (Request to Produce no. 12)

Plaintiffs' Request for Production no. 12 seeks "a copy of all documents, electronically stored information, and tangible things in [Defendants'] possession related to this litigation." Defendants object to this request as overly broad, unduly burdensome and not reasonably tailored to the facts or circumstances of the present litigation.

As observed by Defendants, this request is remarkably open-ended. It is unclear how Defendants could comply with a request for everything "related to this litigation." The Court retains discretion to determine that a discovery request is too broad and oppressive. *Superior Prod. P'ship*, 784 F.3d at 321. Request no. 12 is overly broad, and Plaintiffs' motion to compel a response is denied.

### C. GPM and SCS Motions to Quash [15, 16]

In April of 2017, Defendants subpoenaed GPM and SCS in an effort to obtain information directly from those entities. The companies filed motions to quash Defendants' subpoenas, contending that the requests are unduly burdensome, and seek information that is irrelevant and/or proprietary. (Docket nos. 15, 16.) The Court will address these objections in general before applying them to Defendants' particular requests.

#### 1. Relevance

GPM and SCS contend that Defendants' Subpoena seeks documents that are not relevant to the underlying cause of action. For example, GPM asserts that "Defendant's subpoena seeks information that purports to continue to tie a relationship between the individual Plaintiffs and the corporate entities that they work for—an argument the court implicitly rejected in its ruling on the preliminary injunction motion." (Docket no. 23, p. 3.)

Defendants challenge this assertion, observing that Plaintiffs have made inconsistent statements regarding their respective relationships with GPM and SCS. For example, Defendants submit that Plaintiff Bahorski has claimed to be both an "employee" and an "independent contractor" of SCS. (Docket no. 21, p. 4.)

As addressed above, Plaintiffs' assertion of independence from SCS and GPM places those entities' corporate existences squarely at issue. The Court's determination that Plaintiffs have a likelihood of prevailing on certain issues does not foreclose discovery regarding those issues. In addition, the agreements between SCS/GPM and property owners—which likely set forth the scope of SCS's and GPM's responsibilities—are relevant to Plaintiffs' contention that ordinance violations must be directed against the property owners, as opposed to the property managers and/or their agents. Accordingly, the objections based on relevance are without merit.

2. *Proprietary Nature*

The subpoenaed entities contend that Defendants request "proprietary" information regarding, for example, management contracts between GPM/SCS and property owners. GPM and SCS assert that "[t]he details of the private contracts between those parties are both irrelevant and contain proprietary information in the form of client information and the form and substance of the contract itself." However, GPM and SCS fail to develop this assertion. For example, the motions to quash contain no reasoning regarding the extent to which the requested information is known to competitors of GPM and SCS, the extent of measures taken by the companies to guard the secrecy of such information, or the value of such information to the companies and their competitors. *See Dow Corning & Corp v. Jie Xiao*, 283 FRD 353 (E.D. Mich, 2012) (reciting the factors used under Michigan law to determine whether a trade secret exists). To the extent that SCS and GPM treat their clients' identities as confidential, such information may be redacted in the materials produced to Defendants.

### 3. *Undue Burden*

SCS and GPM contend that Defendants' requests are unduly burdensome to the extent the requests seek materials in Defendants' possession. (Docket no. 16, p. 2.) Defendants fail to address this assertion in any meaningful way. Although Defendants submit that "production of [SCS's and GPM's] property management files, from entities engaged in the business of property management, is not 'unduly burdensome' as defined by law," Defendants advance no rational argument to counter subpoenaed entities' assertion that much of the requested material should be in Defendants' possession. Accordingly, as addressed below, the Court will uphold objections to duplicative requests for material submitted to Defendants and/or requests for communications with Defendants.

### 4. *Application to Defendants' Requests to GPM*

As an initial matter, the Court observes that GPM claims to have fully responded (either by producing all materials in its possession or by claiming not to possess responsive materials) to ten out of Defendants' thirteen requests. (Docket no. 23-3.) The Court will address the remaining objections below.

GPM's objections to Defendants' request for records of payments to Plaintiff Garner (Requests d(iii), d(iv), and e) are denied. Such material is relevant, and GPM fails to establish that the information is proprietary, privileged or protected.

GPM's objection to Defendants' request for GPM's operating agreements (Request m) is denied. The agreements are relevant to Plaintiff Garner's assertion of independence from GPM, and GPM fails to establish that the information is proprietary, privileged or protected.

### 5. *Application to Defendants' Requests to SCS*

In contrast to GPM, SCS maintains its objections to each of Defendants' requests. As set forth below, the Court will uphold certain objections and reject others.

17

SCS contends that Defendants' requests for materials submitted to Defendants (Requests a, h, i, j, k) are unduly burdensome. For the reasons set forth above, the Court upholds SCS's objections to duplicative requests for material submitted to Defendants and/or communications with Defendants.

SCS objects to Defendants' requests for management contracts between SCS and property owners (Request b) as well as records of charges to property owners for fines and fees associated with the rental properties (Request m). The requested materials are relevant to Plaintiffs' contention that ordinance violations must be directed against the property owners, as opposed to the property managers and/or their agents. Accordingly, SCS's objections to these requests are denied.

SCS objects to producing documents regarding Plaintiff Bahorski's relationship with SCS, including invoices for services (Requests d, f), contracts between Bahorski and SCS (Request e), and payroll records (Request g). As discussed above, the relationship between Bahorski and SCS is at issue in this matter, and materials that pertain to the nature of that relationship are relevant. Moreover, SCS fails to demonstrate that these requests seek proprietary information or impose an undue burden. Accordingly, SCS's objections to these requests are denied.

Finally SCS's objection to Defendants' request for SCS's operating agreements (Request n) is denied. The agreements are relevant to Plaintiff Bahorski's assertion of independence from SCS, and SCS fails to establish that the information is proprietary, privileged or protected.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel [26] is **GRANTED IN PART**, and **DENIED IN PART** as set forth in this order. Plaintiffs will respond accordingly within 21 days of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Compel [34] is **DENIED**.

**IT IS FURTHER ORDERED** that motions to quash filed by non-parties Summit Consulting Services, LLC [16] and Garner Property & Management, LLC [15] are **GRANTED IN PART**, and **DENIED IN PART** as set forth in this order. Summit Consulting Services, LLC and Garner Properties & Management, LLC shall respond accordingly within 21 days of this Order.

### NOTICE TO THE PARTIES

Pursuant to Fed. R. Civ. P. 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: November 14, 2017           **s/ Mona K. Majzoub**
                                   MONA K. MAJZOUB
                                   UNITED STATES MAGISTRATE JUDGE

### PROOF OF SERVICE

I hereby certify that a copy of this Opinion and Order was served upon counsel of record on this date.

Dated: November 14, 2017           s/ Leanne Hosking
                                   Case Manager